IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOGIK SYSTEMS, INC.
709 G Street, NW
Washington, DC  20001,

      Plaintiff,

v.

DOUGLAS MARCH
1800 Wilson Blvd., Apt. 432
Arlington, VA  22201

      Defendant.

Case No. _____

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Logik Systems, Inc. ("Logik" or the "Company"), by counsel, files this Complaint for Injunctive Relief and Damages against Defendant Douglas March ("March"), and alleges:

## NATURE OF THE ACTION

1. This is an action to enforce the Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Agreement") entered into by Logik and March at the start of March's employment with the Company in October 2009, and for violations of the District of Columbia Uniform Trade Secrets Act and the common law against conversion. Specifically, in violation of the confidentiality provision of the Agreement, the D.C. Uniform Trade Secrets Act, and the common law against conversion, March has misappropriated the source code for Logik's

primary e-discovery application – Gridlogik – as well as the source code for Logikcull – an e-discovery application currently in development by Logik.

## PARTIES

2. Logik is a Delaware corporation with its principal place of business in the District of Columbia.

3. Logik provides e-discovery services including processing and hosting to corporations, law firms, government agencies, and service providers throughout the country.

4. Upon information and belief, March is a citizen of Virginia who currently resides at 1800 Wilson Blvd, Apt. 432, Arlington, VA 22201. March was employed by Logik as a Senior Front-end Web/Product Developer from approximately October 26, 2009 through July 2, 2010. During his employment, March held a position which allowed him access to Logik's confidential and trade secret information, including, but not limited to, the source code for both Gridlogik and Logikcull.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to the diversity of citizenship provisions contained in 28 U.S.C. § 1332 because the matter in controversy, including the value of the injunctive relief sought, exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to Logik's claims against March occurred in this district as March was employed by Logik in the District of Columbia.

## FACTUAL BACKGROUND

7. Logik is engaged in the e-discovery business. Specifically, Logik provides

processing and hosting services. Its clients include corporations, law firms, government agencies, and service providers. Logik provides its clients with an on line document review repository within which the client can search, review, tag, and export documents. Logik differentiates itself from its many competitors by providing superior pricing, quality, speed, security, support, and scalability.

8. Logik invested and continues to invest significant effort, time, and money to developing software to process massive amounts of data for its clients. The data processing results in a reliable quality product for Logik's clients.

9. Specifically, Logik developed Gridlogik – an e-discovery application that takes in data such as emails and documents and converts all of the data into a uniform searchable format. Gridlogik also streamlines the data that can be searched by among other things eliminating duplicates. The two founders of Logik spent approximately one year working full time to develop Gridlogik and it is Logik's primary product today. Logik is continuously refining Gridlogik and employs two full time engineers and two Summer interns to work on such refining. Gridlogik is used exclusively by Logik employees.

10. In addition, Logik is currently in the process of developing Logikcull – an e-discovery application that is similar to Gridlogik in that it will convert data into a searchable format. Unlike Gridlogik, Logikcull will be web-based and available for use by the general public for a fee. To date, Logik has paid approximately $200,000 to another company to help develop Logikcull.

11. The e-discovery applications described in paragraphs 9 and 10 are valuable, confidential, and proprietary to Logik, and are not generally known in the public domain.

12. Individuals employed by Logik who are engaged either in using Gridlogik or

developing Logikcull become intimately knowledgeable regarding the applications.

13. The aforementioned information has significant economic value to Logik, and would be of significant economic value to competitors in the e-discovery business.

14. To maintain its competitive advantage, Logik takes measures to ensure that its confidential and proprietary trade secrets such as the source code for Gridlogik and Logikcull are not disseminated outside of the Company. Specifically, Logik uses password protection on its computers, limits access to its applications, and uses secure data storage.

15. To protect its legitimate business interests with respect to the aforementioned information and the investment it makes in its e-discovery applications, Logik requires that individuals it employs who will develop, sell, or use Gridlogik or Logikcull sign a Non-Competition, Non-Solicitation, and Confidentiality Agreement as a condition of employment.

## MARCH'S EMPLOYMENT WITH LOGIK

16. On or around October 26, 2009, March began working for Logik as a Senior Front-end Web/Product Developer. March was employed by Logik from approximately October 26, 2009 to July 2, 2010.

17. After he was hired, March introduced Logik to the company that Logik then contracted with to help develop the source code for Logikcull. Because of his prior connection with the company, March became the point person in interacting with the company helping develop the source code for Logikcull. During his employment with Logik, March had daily interaction with the company helping develop the source code for Logikcull.

18. Prior to his employment with Logik, March had no knowledge of Logik's confidential information or trade secrets, *e.g.*, the source code for Gridlogik and Logikcull.

19. March had access to Logik's proprietary and confidential information, including, but not limited to, the source code for both Gridlogik and Logikcull.

20. Neither the source code for Gridlogik nor the source code for Logikcull is obtainable from public sources.

## THE NON-COMPETITION, NON-SOLICITATION, AND CONFIDENTIALITY AGREEMENT BETWEEN LOGIK AND MARCH

21. As a condition to, and in consideration of, March becoming employed by Logik, March was required to sign the Agreement, which included confidentiality provisions.

22. March signed his Agreement on October 1, 2009. (A copy of the Agreement signed by March and Logik is attached as Exhibit A.)

23. The Agreement provides, *inter alia*, as follows:

> **Definitions.** For the purposes of this Agreement, the following words shall have the following meanings:
>
> "Confidential Information" means any and all information pertaining to Company and its business and operations (whether or not marked or otherwise specifically designated as proprietary or confidential) that is either owned or used by or otherwise in the possession of Company. Confidential Information includes, but is not limited to, Company's trade secrets, which include, but are not limited to, non-public information regarding Company's GridLogik software; any derivative products and services, sales methodologies and training techniques; any intellectual property owned, licensed or used by Company; any of Company's business plans, marketing plans, cost and pricing information, customer and prospective customer lists, customer needs and preferences, or suppliers and vendors; internal financial information, compensation and benefit information; and information provided to Company by any third party under restrictions against disclosure. Notwithstanding the foregoing, "Confidential Information" shall not include any information that is known or readily ascertainable to the public in the same or an equally useable form or compilation to that in which it is maintained by Company.

**Nondisclosure of Confidential Information.** Employee further agrees that he/she will not, except as Company may otherwise consent or direct in writing, reveal or disclose, sell, use, publish, or otherwise disclose to any third party any Confidential Information or proprietary information of Company, or authorize or assist anyone else to do these things, at any time either during or subsequent to his/her employment with Company. This section shall continue in full force and effect after termination of Employee's employment for any reason. Employee agrees to avoid any position or activity where disclosure would be inevitable. Employee's obligations under this section of this Agreement with respect to any specific Confidential Information and proprietary information shall cease when that specific portion of Confidential Information and proprietary information, in the same or an equally useable form to that maintained by Company, becomes publicly known in its entirety and without combining portions of such information obtained separately. It is understood that such Confidential Information and proprietary information of Company include matters that Employee conceives or develops, as well as matters Employee learns from other employees of Company.

**Injunctive Relief.** In the event of breach or threatened breach by Employee of any provision of this Agreement, the Parties stipulate that a significant part of the injury or prospective injury would be largely irreparable in nature and therefore Company shall be entitled to: (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction, and (ii) any other legal and equitable relief to which it may be entitled. The foregoing shall not be Company's exclusive remedy, and shall be in addition to any and all quantifiable monetary damages which Company may incur as a result of said breach, or any liquidated damages agreed to herein. In the event a bond is required, the agreed amount for the bond is One Thousand Dollars ($1,000.00) if an injunction is sought by Company.

**Understand Agreement.** Employee represents and warrants that he/she has read and understood each and every provision of this Agreement, and Employee understands that he/she is free to obtain advice from legal counsel of choice, if necessary and desired, in order to interpret any and all provisions of this Agreement, and that Employee has freely and voluntarily entered into this Agreement.

(Agreement, ¶¶ 2(a), 5(a), 6, 14.)

## **MARCH'S RESIGNATION**

24. At approximately 9:20 a.m. on July 2, 2010, Andy Wilson and Sheng Yang – Logik's two co-founders – met with March. Wilson and Yang asked March to resign his employment with Logik because it was clear to them that he was unhappy at Logik and his job performance was unsatisfactory. March agreed to resign his employment. During this meeting, Logik offered March two weeks of severance pay in exchange for signing a release of claims. March indicated that he would think about the severance agreement over the holiday weekend and, if he agreed to sign it, would bring it into the office on Tuesday, July 6. March requested to return to the office on July 6 to retrieve his personal belongings. Logik agreed to that request.

25. On July 2, March asked if he could take his Company-provided lap top home to back up his personal data. Logik declined to allow March to remove his Company-provided lap top from the office after his resignation, but offered March a hard drive for transferring whatever personal data he had on Logik's lap top. March declined the offer of a hard drive and proceeded to back up on line what Logik believed at the time was his personal data only.

26. Before March left the Logik office on July 2, he initiated the re-installation of the operating system on Logik's lap top. Upon information and belief, March's action was intended to erase the lap top's hard drive.

27. Logik instructed March to leave his key card to the office with Allison Marino - Logik's Financial Manager - before he left the office on July 2.

28. March left the Logik office at approximately 10 a.m. on July 2, but did not leave his key card with Ms. Marino as he had been instructed.

29. Logik became aware of March's attempt to erase the hard drive shortly after March left the office on July 2 and immediately stopped the deletion process.

30. Because March's attempt to wipe the hard drive raised Logik's suspicions as to his recent activities, the Company began to review the lap top which March had been using.

31. Logik's review of March's Company lap top on July 6 and 7 revealed the following:

- On May 12, 2010, March shared Logik's trade secrets with a third party who works for a competitor. (A copy of the chat between Doug March and Jeff March on May 12, 2010 between 1:54 p.m. and 2:24 p.m. is attached as Exhibit B.)

- Upon information and belief, on June 29, 2010, March met with a competitor of Logik's to discuss developing an application to compete with Logikcull. (A copy of the chats between Doug March and Jeff March on June 24, 2010 between 2:44 p.m. and 2:46 p.m. and on June 28, 2010 at 8:27 p.m. is attached as Exhibit C.)

- On June 29, 2010, March discussed developing an application to compete with Logikcull with the company that Logik is paying to help develop the source code for Logikcull. (A copy of the chat between Doug March and Chad Fowler on June 28, 2010 between 12:32 p.m. and 12:38 p.m. is attached as Exhibit D.)

- Just minutes after agreeing to resign his employment with Logik, March asked a friend how to erase a computer. (A copy of the chat between Doug March and Chad Fowler on July 2, 2010 between 9:23 a.m. and 9:27 a.m. is attached as Exhibit E.)

- Approximately 10 minutes later, March uploaded a text file containing Logik passwords to his personal Dropbox account on the web. (A copy of the Dropbox Version History of "logic-info.txt" page from March's personal Dropbox account on the web showing that March added the logic-info.txt file on July 2, 2010 at 9:39 a.m. using Logik's lap top and then deleted it on July 2, 2010 at 2:26 p.m. using his home computer is attached as Exhibit F.) March then deleted the file that same day at 2:26 p.m.[1] (Id.)

- Before July 4, 2010, March uploaded the source code for both Gridlogik and Logikcull to his personal Dropbox account on the web. (A copy of the Recent Events page from March's personal Dropbox account showing that March deleted files called Logikcull and Gridlogik on July 4, 2010 at 2:30 p.m. is attached as Exhibit G.)

- March currently has the source code for Logikcull in a folder that he can share with third parties in his personal Dropbox account on the web. (A copy of the My Dropbox page from March's personal Dropbox account showing that March added the Logikcull source code to his public folders on July 4, 2010 between 3:58 p.m. and 4:03 p.m. is attached as Exhibit H.)

32.   Upon information and belief, March currently has the source code for Gridlogik and Logikcull as well as other trade secrets of Logik's on his home computer.

---

[1] Because Dropbox automatically syncs all of the user's files on the web and on the desktop, the deletion of a file from the web does not delete the file from the user's desktop.

33. On the morning of July 6, Logik found March's signed severance agreement and key card on Ms. Marino's desk.

34. A review of the key card access logs shows that March entered the Logik office without Logik's authorization on Monday July 5 when the office was closed for the holiday.

35. Upon information and belief, March attempted to cover up his theft of the source code for Gridlogik and Logikcull by re-installing the operating system on the Company's lap top in an effort to wipe the hard drive of the lap top.

36. Upon information and belief, March intends to use the source code for Logikcull to create an application to compete with Logik and/or to sell the source code for Logikcull to a competitor of Logik's.

## COUNT I - BREACH OF CONTRACT

37. Logik incorporates and realleges paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. The conduct of March as alleged herein constitutes a breach of the provisions of his Agreement.

39. March breached his Agreement in that he has revealed, used, published, and disclosed Logik's confidential and proprietary information, *e.g.*, the source code for Gridlogik and Logikcull.

40. As a result of March's breach of the Agreement, Logik has been and/or will be severely and irreparably damaged.

41. All conditions precedent necessary for the enforcement of the Agreement have been satisfied.

42. Logik will not have an adequate remedy at law for the harm and damage that March's continued breach of his Agreement will cause.

## COUNT II – VIOLATION OF DISTRICT OF COLUMBIA UNIFORM TRADE SECRETS ACT

43. Logik incorporates and realleges paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. During his employment with Logik, March was provided access to and did use Logik's trade secret information, including the source code for Gridlogik and Logikcull.

45. Gridlogik and Logikcull were invented and produced by Logik at substantial expense and are of considerable economic value because they are not available to Logik's competitors.

46. Logik's confidential information, including the source code for Gridlogik and Logikcull, were developed by Logik and constitute "trade secrets" within the meaning of District of Columbia Code Ann. § 36-401(4).

47. Logik has undertaken reasonable efforts to maintain the secrecy of this information, including requiring its employees to sign contractual agreements not to disclose, appropriate, or utilize such valuable, proprietary and confidential information.

48. By improper means, March has misappropriated Logik's trade secret information for his own use and benefit.

49. As a consequence of March's misconduct, Logik has suffered and will continue to suffer damages including loss of business, loss of competitive advantage, and loss of the value of its trade secrets. The harm suffered by Logik is continuing and cannot be compensated by money damages alone, and thus, Logik is entitled to injunctive relief. Furthermore, upon information and belief, March has been unjustly enriched as a result of his activities.

50.     The misappropriation of Logik's trade secret information was willful and malicious, thus entitling Logik to awards of exemplary damages and attorneys' fees under the District of Columbia Uniform Trade Secrets Act. D.C. Code Ann. §§ 36-403(b), 36-404.

## COUNT III – CONVERSION

51.     Logik incorporates and realleges paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52.     March has misused, misappropriated, and/or converted Logik's confidential and proprietary information including but not limited to the source code for Gridlogik and Logikcull for his personal use and benefit.

53.     To date, March has failed and/or refused to return or to compensate Logik for his misuse, misappropriation, and/or conversion of Logik's confidential and proprietary information.

54.     The value of Logik's confidential and proprietary information misused, misappropriated and/or converted by March is at least $200,000.

55.     As a result of March's unlawful conversion of Logik's confidential and proprietary information, Logik has suffered monetary damages in an amount to be determined at trial.

## STATEMENT OF IRREPARABLE INJURY TO LOGIK

56.     Logik has been and continues to be subjected to irreparable injury for which no adequate remedy at law exists.

57.     Given the fierce competition in the e-discovery business and the revenue at stake, the unlawful actions by March are causing and will continue to cause great and irreparable harm to Logik's business which cannot be adequately remedied by an award of monetary damages. The actions described herein are causing and will continue to cause Logik harm and irreparable

damage insofar as that conduct causes loss of business, loss of competitive advantage, and loss of the value of the Company's trade secrets. Logik will continue to suffer such injury unless March is restrained and enjoined from continuing the unlawful conduct and from violating the provisions of the Agreement and the District of Columbia Uniform Trade Secrets Act.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Logik demands a trial by jury on all the issues so triable.

## PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, Logik demands the following:

a. preliminary and permanent injunctive relief prohibiting March from breaching the obligations in his Agreement;

b. an accounting for and payment of any compensation or other gain received, directly or indirectly, by March in any transaction connected with the breach of his Agreement;

c. actual damages;

d. exemplary damages;

e. attorneys' fees; and

f. such other and further relief as this Court may deem proper.

Dated: July 13, 2010

Respectfully submitted,

/s/ Katherine Goetzl
Paul J. Kennedy  (D.C. Bar No. 428623)
pkennedy@littler.com
Katherine A. Goetzl  (D.C. Bar No. 457660)
kgoetzl@littler.com
LITTLER MENDELSON, P.C.
1150 17th Street N.W., Suite 900
Washington, DC  20036
202.842.3400 Telephone
202.842.0011 Facsimile

Counsel for Plaintiff
Logik Systems, Inc.

Firmwide:96237656.1 060674.1000

14.